[For another case involving this patent, see Dodge v. Feary, 8 Fed. 329.]

## Case No. 13,690.

### SWETT et al v. BLACK et al.

[1 Spr. 574.][1]

District Court, D. Massachusetts. June, 1861.

PARTIES—ASSIGNEE—ADMIRALTY—WITNESS—COMPETENCY—INTEREST—EFFECT OF DECREE—AFFREIGHTMENT.

1. An assignee of a chose in action may sue in his own name, in the admiralty.

[Cited in The Norfolk, Case No. 10,297; The Sarah J. Weed, Id. 12,350.]

2. And this is so, if the assignment be only of a part of the entire right; or, at least, the respondents cannot object, on that ground, if the whole right be represented by the libellants.

3. In a suit by the owners of a vessel against the shippers of a cargo, for freight, where the defence is, that the cargo was never delivered to the consignee, the master, although interested, is a competent witness.

4. The decree, in such case, would not be evidence for or against the master, in a future suit against him by the shippers, it appearing that, if the cargo was not delivered, it was owing to his own default.

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

5. The master having been a part owner of the vessel, when the contract of affreightment was made, and the voyage performed, and having afterwards assigned all his right and interest, and not being a party to the suit, the decree, in this case, would not be evidence for or against him, in a future suit, by the shippers, against him as part owner, it appearing that, if the cargo was not delivered, it was owing to his own default.

This was a libel in personam, in admiralty, promoted by the owners of the brig Edinburgh, to recover freight for a cargo of lumber, transported from Boston to California. The libel alleged a shipment by the respondents, and a delivery by the master, to the consignee and agent of the respondents, at Sacramento City. The answer set up the defence that the respondents were not parties to the contract, and if parties, not liable, because the master had failed to deliver the cargo. At the hearing, the deposition of the master was offered in evidence for the libellants. It appeared by his deposition, that the deponent was a part owner of the vessel, with the libellants, at the time the contract was made, and until after the vessel returned to Boston, and that he had conveyed his interest in the vessel and in this claim to James A. Swett, one of the other owners, before this suit was brought. As master, he was sailing the vessel on wages.

Sidney Bartlett and David Thaxter, for respondents.

(1) The deponent is a necessary party libellant, being one of the contracting parties, and owner of this claim, when it became due. At common law, a claim of this sort, being a chose in action, cannot be sued in the name of the assignee. It is not negotiable, either by statute or by the custom of merchants. It is incumbent on the libellants to show affirmatively, that a different practice obtains in the admiralty. There is no statute of the United States, or rule of the court, allowing it; and it is believed that no instance can be found in the reports of the English admiralty, to which we owe our rules of practice. It is also a right of the respondents to have the original contracting parties made parties to the record, with reference to rights of set-off, or recoupment, and equities. But if the assignee of an entire claim can sue it in his own name, it is not in the power of a part owner of a claim to introduce a new part owner.

(2) The deponent is disqualified, as a witness, by reason of interest. He is interested, first as master, and second, as part owner. The point to which he is to testify is the due performance of the contract. First. As master, he is liable over to the libellants, in case he failed to perform the contract, and consequently has an interest to procure a decree in their favor. Second. As master, he is by the law merchant, liable to the respondents for a non-delivery of the cargo, as an original and independent contracting party, by the bill of lading, and is interested to procure a decree establishing the fact that the contract was performed by him. Such a decree he could use as a bar, or in evidence, in his own defence, and, if not, he could use it as a defence of the owners, to avoid circuity; for if the shippers could recover of the master, and the master recover over of the owners, and the decree could not be used in either suit, it could not avail the parties who obtained it. Third. As part owner, he could be sued by the shippers for non-delivery of the cargo, and could plead non-joinder of his co-owners; or, if not, and he were mulcted in damages, he could have a claim over for contribution. If, in this suit, the respondents succeed upon the ground of non-delivery, then they clearly can sue the owners, including the witness, for damages. If, however, the question of delivery is decided against them, then it would be a bar to any suit against the witness, as part owner, either because he could compel the joinder of the other co-owners, or call upon them for contribution, in either of which cases, the other co-owners would be compelled to litigate the same question twice, contrary to the policy of the law.

Richard H. Dana, Jr., for libellants.

The assignee of a chose in action may sue in his own name, in the admiralty. The admiralty practice, in this respect, is derived from the Roman law. 2 Brown, Civ. & Adm. Law, 348; Betts, Adm. Prac. 11. In the United States, the civil law is the source of admiralty practice, by statute. Act 1789, c. 21, § 2 (1 Stat. 93). The rules and practice of the English admiralty courts are not a test either of the jurisdiction, powers or practice of the admiralty and maritime courts of the United States. Act 1789, c. 21, § 2; Waring v. Clarke, 5 How. [46 U. S.] 441; Nelson v. Leland, 22 How. [63 U. S.] 48; The Magnolia, 20 How. [61 U. S.] 296; The Genesee Chief, 12 How. [53 U. S.] 443; Fretz v. Bull, Id. 466. The history and gradual establishment of the right of the cessionary (assignee) of a demand, to sue it in his own name, is presented in the following summary:

By the Roman law, an obligation, i. e., the legal relation arising from express or implied contract, (and, by that law, also ex delicto,) is intransferable. The increase of affairs, however, demanded transfers. The delegatio, by which, in place of the old, was substituted a new obligation, (a so-called novatio,) with the assignee as the creditor, was objectionable, especially as requiring the co-operation of the debtor. Resort was had to the relation of procuratorship. The Roman procurator ad agendum, (i. e., ad litem,) did not stand in the same relation to the suit, as a modern attorney, or proctor. This resulted from the peculiar effect attributed to the litis contestatio, (joining of is-

sue,) which also worked a novatio, a substitution for the cause of action, of a new, a forensic obligation, (contract of record,) viz., to perform the judgment; and this bound only those who actually pleaded in propriâ personâ. At this point in the proceedings, the procurator became, of course, dominus litis, and the judgment ran in his name, and belonged to him. This change of relation during the suit shows itself in the formula, or brief instruction, sent down by the prætor to the trial-judge, e. g.: "If it appear that the defendant owes Titius a thousand aurei, condemn him to pay the same to Mævius," (i. e. the procurator of Titius.) When the procurator was merely for the purposes of the litigation, the principal was secured by the legal obligation of the procurator to have the judgment applied to his benefit. When, however, a transfer of the claim itself was intended, this obligation did not arise.—the procurator retained his judgment for his own benefit,—hence the name procurator in rem suam, for what, in later law, is called cessionarius, our assignee. But there was still an interval of insecurity for the procurator in rem suam, before the litis contestatio created a privity between him and the debtor, who might anticipate it by settlement with the creditor. This led to the denunciatio, or notice to the debtor, which prevented subsequent dealings to the prejudice of the assignee. From this point, I follow more particularly Savigny, in his Obligationen-Recht, 1. 244, &c., a work still in the course of publication, and thus the latest, as well as of the highest authority, among civilians. He says that where there was already an assignment of the claim, the necessity of obtaining, in addition, a mandatum procuratoris, an express and regularly written authority to sue the claim, as procurator, was liable to many objections. It was, in any case, a circuitous formality, and might be very prejudicial to the assignee, if the assignor should prove recusant or dilatory, and require legal compulsion. And even after it was executed, it was liable to be voided by death, so that the assignee could no longer sue in the assignor's name; that it was, no doubt, the experience of these inconveniences that led to an obvious resource to simplify the proceedings. This was, that wherever there already existed a causa cessionis, such a relation, (e. g., by assignment of a claim,) as would entitle one to demand the use of the remedy on it, he might bring the action immediately in his own name. This was a utilis actio, and the assignee sued therein no longer as procurator, but suo nomine. i. e., in the formula, (see above,) the statement of the claim, intentio, as well as the condemnatio, is in the name of the assignee; and this as the more advantageous, became the regular remedy. See (besides Savigny) Mühlenbruch's Cession of Claims, p. 495 et seq.; 3 Vangerow's Lehrbuch der Pandekten, 104–107, 116–121;

2 Puchta's Cursus der Institutionen, 266 et seq.; Heffter's Civil Process, 82; 2 Mackeldey's Römisches Recht, § 333 et seq.; 2 Goeschen's Civil Recht, 22 et seq.; Schweppe's Röm. Privat Recht, § 400. In one passage, arguendo, Mühlenbruch thinks that this change of form is probably not attributable to the resort to the utilis; but the texts from the Corpus Juris, L. ult. C. Quando Fiscus, &c., IV. 15, and L. 18, C. de Legat. VI. 37, which he endeavors to explain, seem irreconcilable with any other historical view than that of Savigny, and the other authorities. Subsequently, however, Mühlenbruch says (page 495): "In the suit against the debtor, the assignee is treated in every particular as the true party to the action, both in respect to his rights as plaintiff, and to the pleas and counter-claims which the defendant has against any one who sues in his own name, without reference to the question, whether the cause of action were originally his own, or derived from another." See also, page 196.

On the point raised by the respondent, the result is the same. The forensic position of an assignee, with its consequences, is that of an ordinary plaintiff suing his own claim.

As to the form of remedy: Utilis actio was the general name for any form of action when extended by analogy beyond its original sphere. As the relations of Roman life grew more complex, there grew up alongside of the simple rights of the old jus civile, and corresponding severally to them, equitable rights and beneficial uses; to these the prætor supplied remedies, by extending the action on the old right, by a variation in the formula, to the corresponding new relation. At first, a regular hearing, (causa cognita pro tribunali,) must precede the decree granting a utilis, but this gradually fell away, though the decree, as a formality, continued longer. Both the decree and the distinction in form, had ceased more than a century before Justinian, in whose time all forms of action were merged in the common libel and answer, which has come down through the canon and modern civil law, to the admiralty practice. This practice of the Roman law, to allow the cessionary to sue and have relief in his own name, beside being, by statute, the rule for our courts of admiralty, has, in fact, been adopted and recognized by them. The Boston [Case No. 1,669]; Mutual Safety Ins. Co. v. Cargo of The George [Id. 9,981]; Fretz v. Bull, 12 How. [53 U. S.] 466; Thomas v. Osborn, 19 How. [60 U. S.] 22; Cobb v. Howard (Nelson, J.) [Case No. 2,924]; Ben. Adm. § 380. The practice in courts of chancery is evidence of what the rule of the Roman law was; and especially evidence that that rule has been adopted in England and America. In chancery, if the court has jurisdiction over the cause of action at all, the assignee may sue in his own name; and the assignor is not a necessary party, unless he has

rights which may be affected by the decree. The point in dispute. between Judge Story and some of the English and the New York courts, is only this: Whether the fact that a chose in action is assigned, and the assignee cannot sue upon it at law in his own name, does, of itself, give a court of equity jurisdiction over the suit; or, whether it is incumbent on the assignee to show that a suit at law, in the name of his assignor, is not a sufficient remedy. All admit that there is no technical objection, in equity, to his suing in his own name, if the court has jurisdiction. Story, Eq. Pl. § 153; 1 Pars. Cont. 192–194. and notes; Trecothick v. Austin [Case No. 14,164]; 1 Daniell, Ch. Prac. 248, note 1. The allowing a suit, by the real owner of the right, is not at variance with public policy. Sir. W. Blackstone, treats the relaxation of the old rule of the common law. in the case of notes of hand, as one of the benefits of the Revolution of 1688. It is now established, as the general practice in New York, under the late Code, that the assignee may sue in his own name. Code Proc. N. Y. (5th Ed.) 76, a.

SPRAGUE, District Judge. This is a libel by the owners of the brig Edinburgh, to recover freight for a cargo of lumber transported from Boston to California.

The libel alleges the shipment by the respondents, and a delivery by the master, to their consignee, at Sacramento City.

The answer denies the delivery. There is no doubt, that this cargo was taken on board at Boston, and was safely transported to its destination at Sacramento, but whether it was there delivered by the master to the consignee, is a matter in controversy.

The master was part owner, when the contract for the transportation of this cargo was made; but afterwards. and prior to the commencement of this suit, he sold all his right and interest in the ship and voyage, to one of his co-owners, who are the libellants. It was objected, that he ought to have been joined in this suit, and that the assignees of his interest cannot represent it in this libel; but I am satisfied, from the authorities which have been adduced by the counsel for the libellants, as well as by the practice of this court, that an assignee of a chose in action may maintain a suit. in his own name, in the admiralty. It has been urged that, even if such be the rule, where the assignor had the entire interest, it ought not to be permitted where he was only a part owner, as he might thus bring a stranger in, as a co-plaintiff, against the will of his associates. But it will be time enough to consider such an objection. when made by his associates. The respondents certainly cannot avail themselves of it. It is not for them to defeat the suit of the libellants, under color of protecting their rights.

The deposition of Swett was offered by the libellants' counsel. Its admission was objected to, on the ground of interest, and this for several reasons. In the first place, that he is called to testify that he performed his duty, in delivering this cargo to the consignee, and that, if it were not delivered, it was through his default, for which, as master, he is liable to his owner. On the other hand. it is insisted that this creates no interest; and that. if it does, it comes within the exception, by which agents are admitted as witnesses, from necessity. Upon this question the authorities are numerous, and not easily reconcilable. 1 think the law is best laid down by Chief Justice Shaw, in Draper v. Worcester & N. R. Co.. 11 Metc. (Mass.) 505. That was a suit for the non-delivery of goods transported by railroad. The agent, whose duty it was to receive and deliver them at the depot. was called, as a witness, by the corporation. The court were inclined to think that he was not interested. but placed their decision on the ground, that, if interested, still he was a witness from necessity.

In the present case, as it appears that the master had the cargo in his own possession and control. and ought to have delivered it to the consignee, I think he has an interest that the libellants should recover in this suit. If they fail, on the ground of non-delivery of the cargo, they may immediately resort to him for compensation. But if they prevail in this suit, then their legal right to compensation from the shippers is established; and whether they obtain satisfaction or not. they cannot say that they have lost their legal right to enforce payment of the freight, by the default of the master. The decree will establish their right, and if not satisfied, it will be because their debtors are insolvent.

But I think the testimony of the master admissible, because it is within the exception by which an agent is admitted, as a witness, from necessity, to show that he performed acts which were within the regular course of his business.

It is further objected. that the master of a vessel being liable to a suit by the shippers, if the cargo be not delivered. Swett has an interest. because the decree may be evidence in a future suit between him and the respondents.

It is not contended that, if the respondents prevail, they can use this decree in a suit against the master. But it is said that, if the decree shall be against them. he may set it up in a future suit against him, for not delivering the cargo, But not being a party to this suit, he is not bound by its result, for he has had no opportunity to litigate the matters in issue; and not being bound by it, he cannot, in his own right. and merely for his own protection, avail himself of the decree. as a defence. If he can set up the decree, as a defence, in a fu-

ture suit against himself, it must be because such a course is necessary for the protection of those who have a right to be thus protected—that is, the libellants in the present case.

The contract of affreightment is made for the benefit of the owners of a vessel. Assuming that the master is liable to the shippers, such liability is founded upon maritime policy, not upon the general principles of contracts made by agents. His liability, therefore must rather be deemed subsidiary than primary; and if compelled to pay the shippers for a cargo lost, without any fault or neglect of his, he must have a right over against his owners for indemnity. If these libellants prevail in this suit, the decree will, as between the parties, judicially establish the delivery of the cargo; for that fact is directly in issue, and the libellants have a right to be protected, by this decree, against any future suit by the respondents, for the non-delivery of the cargo.

Suppose, then, that the respondents should hereafter sue the master, for not delivering the cargo, if he cannot set up this decree, as a defence, he may be compelled to pay the whole value of the cargo; and then, if in no default himself, he must have a right to recover the same amount from his principals, the owners of the vessel; and thus they would be compelled, indirectly, through the master, to pay damages to the shippers, for the non-delivery of the cargo, when its actual delivery had been judicially established, in a suit directly between the owners and the shippers.

In Greely v. Dow, 2 Metc. (Mass.) 176–180, a question arose as to the admissibility of a surety, as a witness for his co-surety, and the right of contribution was adverted to. That case, however, is not analogous to the present, and I am not satisfied that the master would not be entitled to plead a decree in favor of the present libellants, in bar of a future suit against him, as master, by the respondents, for the loss of his cargo, provided such loss was without his fault, so that, if compelled to pay, he would have a remedy over against the ship owners. But in the present case, upon the facts now presented to the court, it is quite clear that, if this cargo was not delivered to the consignee, at Sacramento, it was wholly owing to the fault of the master; and, if compelled to pay the shippers, he could have no claim for indemnity against his principal.

Looking, then, at the actual state of this case, the master would not have a right to plead this decree, in a future suit by the shippers, for his own protection, because he is no party to the suit; and he would have no right to plead it for the protection of his owners, because they would be subject to no liability over to him. As master, then, he has no such interest as to exclude him from being a witness. But it is further urged, that he is interested, as an original contractor for the transportation and delivery of this cargo, as he was then a part owner of the vessel. Should he be sued alone, for the loss of the cargo, he might plead the non-joinder of his co-owners in abatement. Whether a replication to such plea, setting forth the proceedings and decree in this suit as a severance of his right and interest, by his own act, and claiming to recover only the one-fourth for which he would have no claim to contribution from his co-owners, would be a good answer to the plea in abatement, I will not pause to consider. But supposing that he has a right to abate the suit, for the non-joinder, this right he would have, whether the decree in this case be for or against the libellants, or if there be no decree. But the consequence of the exercise of such right to plead in abatement may be to compel the shippers to bring their suit against all the owners, including the libellants, who may then defend themselves by pleading the decree in this case, should it be in their favor. And if Swett should join in that plea with the libellants, he would, perhaps, be protected by it. But his protection, in such case, would not be owing to any right to plead the decree himself, for his own benefit, but to the right of his associates, to plead it for their benefit. If, therefore, they should make no defence, or refuse to put in such a plea, (and this might happen, either from a sense of justice to the shippers, or their own insolvency,) then Swett could not interpose it. So also, if the co-owners were dead, the suit might be against Swett alone, and he could not avail himself of the decree, merely for his own protection. The interest, then, that he would have in such a decree, would not be certain, but contingent upon the lives of his associates, or their choosing to make defence and plead the decree.

But it may be urged that, if his associates be dead, and he be sued alone, he would have a right of contribution over against his co-owners, if compelled to pay for the cargo, and, therefore, he must have the right, in such case, to set up the decree, in order to protect the estate of those who have a right to its benefits. But here, too, the actual state of facts show that, if Swett, the co-owner, is liable to pay for this cargo, it is a liability arising from his own personal default, he being the master as well as the part owner, and, therefore, he could have no claim against the estate of deceased part owners for indemnity or contribution. In the case of Sheehy v. Mandeville, 6 Cranch [10 U. S.] 253, the effect of a judgment against one of several joint promissors was considered. In that case, a promissory note having been given by two partners, Jamesson and Mandeville, one of them, Jamesson, was sued alone, and a several judgment rendered against him. In a subsequent suit against both, Jamesson made no defence, and it was held, that Mandeville could not set

up the former judgment against his co-promissor, as a defence.

The deposition of Swett is competent evidence.